WHISPERING PINES AFC, HOME, INC v DEPARTMENT OF
TREASURY

Docket No. 171488. Submitted June 21, 1995, at Lansing. Decided
    August 8, 1995, at 9:10 A.M.

Whispering Pines AFC, Home, Inc., sought a writ of mandamus
and injunctive relief in the Ingham Circuit Court against the
Departments of Treasury and Mental Health to compel the
Department of Treasury not to set off $17,040 from payments
due Whispering Pines under a contract with the Department of
Mental Health for the provision of adult foster care services.
An annual audit by the Department of Mental Health indi-
cated that Whispering Pines had been overpaid, and the setoff
was made in an effort to recoup part of the overpayment. The
court, Peter D. Houk, J., granted summary disposition for the
departments, rejecting claims by Whispering Pines that the
lack of a hearing in the Department of Mental Health violated
its rights to due process under the federal and state constitu-
tions and that the Department of Treasury lacked authority to
make the setoff. Whispering Pines appealed.

The Court of Appeals *held:*

1. Under the federal constitution, various constitutional
rights, including the right of due process attendant to depriva-
tion of property, may be waived by contract with a government
agency if the waiver, as in this case, is clearly embraced within
the terms of the contract.

2. A government contract may validly provide that a desig-
nated officer's decision regarding charges or payment obliga-
tions under a contract shall be final and conclusive, both on the
parties and a court before which the parties have brought their
dispute, if, as in this case, the officer's decision is not the
product of fraud or tainted with equivalent bad faith.

3. Under the state constitution, judicial review of an adminis-

REFERENCES

Am Jur 2d, Constitutional Law §§ 580-582; Counterclaim, Recoup-
    ment, and Setoff §§ 103, 104; Public Works and Contracts §§ 116-
    118.
See ALR Index under Counterclaim and Setoff; Due Process; Public
    Works and Contracts.

trative decision for which no administrative hearing is required is limited to the determination whether the decision was authorized by law. In this case, a hearing was not required by contract or statute and Whispering Pines conceded that the actions and decisions of the Department of Mental Health were authorized by law.

4. A governmental body has the same common-law right as any other creditor to apply unappropriated monies of a debtor that are in the hands of the creditor in extinguishment of debts due the creditor.

Affirmed.

1. CONSTITUTIONAL LAW — DUE PROCESS — WAIVER BY CONTRACT.

The right of due process, as provided under the United States Constitution with regard to deprivation of property, may be waived by contract with a governmental agency if the waiver is clearly embraced within the terms of the contract (US Const, Am XIV).

2. CONSTITUTIONAL LAW — DUE PROCESS — ADMINISTRATIVE LAW.

A government contract may provide that a designated officer's decision regarding charges or payment obligations under the contract shall be final and conclusive, both on the parties and a court before which the parties have brought their dispute, if the officer's decision is not the product of fraud or tainted with equivalent bad faith (US Const, Am XIV).

3. DEBTOR AND CREDITOR — SETOFFS — GOVERNMENT AGENCIES.

A governmental body, as a creditor, has the same common-law right as any other creditor to apply unappropriated monies of a debtor that are in the hands of the creditor in extinguishment of debts due the creditor.

*Bator & Zartarian, P.C.* (by *Nancy J. Roualet*), for the petitioner.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Peter L. Trezise* and *Mark S. Meadows,* Assistant Attorneys General, for the respondents.

Before: SAAD, P.J., and TAYLOR and P. J. CONLIN,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

TAYLOR, J. Petitioner appeals as of right from the circuit court's order denying a writ of mandamus and a temporary restraining order. We affirm.

Petitioner operates an adult foster care home pursuant to yearly contracts with the Department of Mental Health (DMH). Pursuant to these contracts, petitioner is required to maintain certain types of records, and the DMH is authorized to audit petitioner's accounts and conduct yearly cost settlements. The purpose of the cost settlement is to review how petitioner has utilized the contract funds in order to determine if there had been an overpayment. At issue in this appeal is the cost settlement for fiscal year October 1, 1991, through September 30, 1992.

Through its audit, the DMH initially determined that petitioner was overpaid by $55,602. Pursuant to the procedure outlined in the contract, petitioner appealed this determination to the finance officer of the Mt. Pleasant Regional Center for Developmental Disabilities (MPRCDD). Petitioner submitted additional information contending that several expense categories, such as salaries, operational expenses, equipment, and administration, were improperly calculated by DMH auditors. The finance director issued a lengthy analysis of the disputed items and revised the amount due to $57,970. Petitioner then appealed to the facility director of the MPRCDD, who revised several of the expense categories and determined that the amount owed was $58,433. Petitioner then utilized the final step in the administrative appeal process and appealed to the director of the Bureau of Hospitals and Centers of the DMH. The director revised several expense categories and concluded that the amount of the overpayment was $55,180. The director's decision invoked application of paragraph I.2.1. of the contract, which provides:

The CONTRACTOR agrees to repay within 30 days any amounts due as the result of final (meaning following the disposition of any appeals that may be made by the CONTRACTOR) cost settlement or audit. If repayment would place a financial hardship, the CONTRACTOR may negotiate an agreement to include a repayment schedule not to exceed 12 months. In the event the CONTRACTOR fails to keep this commitment, a 7 percent annual interest shall be assessed beginning with the month of payment default or the 13th month and continuing thereafter until the debt is satisfied.

After petitioner refused to pay the $55,180, the DMH turned the matter over to the Department of Treasury (Treasury) for collection. Treasury, by way of setoff, withheld $17,040 due petitioner from the next contract year, in partial satisfaction of the $55,180.

Petitioner sought in the circuit court a writ of mandamus and a temporary restraining order. Petitioner requested that the court compel Treasury to release the $17,040 withheld and enjoin Treasury from withholding any future funds. In support of its position, petitioner argued that its due process rights were violated because it did not receive an evidentiary hearing in which to contest the cost settlement findings. It asserted that the review provided by the Revised Judicature Act (RJA), MCL 600.631; MSA 27A.631, was insufficient because the RJA only permitted review of the issue whether the DMH was authorized by law to make its decision.

The circuit court denied the relief sought. The court found mandamus inappropriate because there was no clear legal duty to pay petitioner, given petitioner's failure to pursue an appeal under the RJA. The court also rejected petitioner's argument that its constitutional due process rights

had been violated, finding that the RJA would have provided adequate due process. The court also denied petitioner's request for injunctive relief on the basis that it had failed to prove a likelihood of success on the merits.

On appeal to this Court, petitioner argues that respondents' actions denied it due process of law in violation of both the federal and state constitutions. US Const, Am XIV; Const 1963, art 1, § 17. In particular, petitioner asserts that some form of hearing is always required before an individual is finally deprived of a property interest, and that due process requires an opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v Manzo,* 380 US 545, 552; 85 S Ct 1187; 14 L Ed 2d 62 (1965). See also *Mathews v Eldridge,* 424 US 319, 333; 96 S Ct 893; 47 L Ed 2d 18 (1976).

Petitioner entered into a contractual relationship with the DMH in which petitioner agreed to provide adult foster care in exchange for payments of certain amounts of money for certain services. Petitioner also agreed to have those payments audited and to have an administrative agency determine whether any overpayment was made. Further, by entering into the agreement, petitioner acknowledged that these contractual undertakings were subject to a construction incorporating related statutory requirements. As a result, the RJA must be read into the contract and is controlling. Accordingly, the parties' relationship is controlled by the contract, which incorporates the RJA. However, petitioner argues that this understanding of the contract ignores its constitutionally protected right not to be deprived of property without an evidentiary hearing. We disagree for the fundamental reason that this right, if it exists, can be waived.

Petitioner's claims under the United States Constitution are, under these circumstances, without merit. Petitioner first asserts that, although it executed the contract and agreed to be bound by its terms, it did not knowingly, understandingly, and intelligently waive its constitutional right to due process, i.e., to a formal evidentiary hearing to resolve the dispute. We conclude that petitioner's position is incorrect, inasmuch as various constitutional rights may be waived by contract with a government agency, even though such constitutional rights are not specified by the language of the contract, if the waiver is clearly embraced within the terms of that contract. Thus, it has been held that government employees may, by contract, waive the right to speak or write about information gained in the course of government employment, even though in the absence of such a contract they would have a clear First Amendment right to do either. *Snepp v United States,* 444 US 507; 100 S Ct 763; 62 L Ed 2d 704 (1980); see also *Haig v Agee,* 453 US 280; 101 S Ct 2766; 69 L Ed 2d 640 (1981).

Michigan jurisprudence similarly recognizes that rights otherwise invocable by virtue of constitutional provisions may be waived as part of an ordinary contract for goods or services. *McKinstry v Valley Obstetrics-Gynecology Clinic, PC,* 428 Mich 167; 405 NW2d 88 (1987). Indeed, the law favors contractual terms providing for alternate dispute resolution mechanisms. See, e.g., *Morris v Metriyakool,* 418 Mich 423, 439; 344 NW2d 736 (1984). Accordingly, petitioner could, and in fact did, contract to waive such constitutional rights as might exist in contested case administrative proceedings by agreeing to submit to an audit of specified records with a contractually defined review process leading to final decision by a desig-

nated person or officer, in this case the Director of the Bureau of Hospitals and Centers of the DMH.

Further, it has long been recognized that a government contract may validly provide that a designated officer's decision regarding charges or payment obligations under the contract shall be final and conclusive, both on the parties and a court before which the parties have brought their dispute, and that this in itself creates no Fourteenth Amendment problem. If the parties are competent to make the contract in the first instance, they are competent to include such a dispute resolution clause. *United States v Moorman,* 338 US 457; 70 S Ct 288; 94 L Ed 256 (1949). The sole limitation would be the implied proviso, derived from contract law and not as a by-product of constitutional doctrine, that the officer's decision not be the product of fraud or tainted with equivalent bad faith. *Ripley v United States,* 223 US 695; 32 S Ct 352; 56 L Ed 614 (1912). Because petitioner has made no claim of fraud or bad faith that would vitiate the contractual audit process, the limitation is irrelevant to this case. In sum, there is no limitation under either contract law or the United States Constitution on the parties proceeding under the contract.

With regard to the analysis under the Michigan Constitution, we initially note that appeal from an administrative decision in Michigan is derived from Const 1963, art 6, § 28. That provision states in pertinent part:

> All final decisions, findings, rulings and orders of any administrative officer or agency existing under the Constitution or by law which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final

decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record.

Thus, the Michigan Constitution states that if no hearing was required at the agency level, the review of the eventual administrative decision is limited to the determination whether the decision was authorized by law. *J & P Market, Inc v Liquor Control Comm,* 199 Mich App 646, 650-651; 502 NW2d 374 (1993). In this case, the parties acknowledge that neither the contract nor any statute required a hearing. Accordingly, the Michigan Constitution requires nothing more than a determination by the court that the final decision by the DMH was authorized by law.[1] Because art 6, § 28 of the Michigan Constitution establishes the procedure and the scope of review of the final decision of the DMH, that procedure is obviously not subject to constitutional challenge. There can be no due process violation where the constitution itself provides for the procedure to review administrative decisions.

Therefore, under both the United States and Michigan Constitutions, there has been no deprivation of property without due process.

Petitioner next argues that Treasury was without authority to set off the debt due from petitioner. We disagree.

Petitioner asserts that MCL 205.25; MSA 7.657(25), restricts the setoff authority of Treasury. However, this statute regulates the ability of Treasury to levy to recover money owed by a debtor. It does not address the circumstance of monies al-

---

[1] In its brief on appeal, petitioner concedes that the DMH's actions and decision are authorized by law.

ready in the possession of the government. Accordingly, the statute is inapposite to this case. This issue helpfully has been addressed in an opinion of our Attorney General in OAG, 1979-1980, No 5794, p 1028 (October 7, 1980), wherein he opined that no statute or case law

> abrogate[s] or modif[ies] the common law right of the State to set off any liquidated sums which may be due it by a citizen against any refund or income tax which may be due the citizen. *Brown v Lobdell,* 36 Or App 399; 585 P2d 4 (1978); *United States v Muncie Trust Co,* 332 US 234; 67 S Ct 1599; 91 L Ed 2022 (1946). [*Id.,* p 1031.]

Similarly, the well-reasoned opinion in *Knisley v Bowman,* 656 F Supp 1540, 1547 (WD Mich, 1987), is instructive with regard to this issue. In *Knisley,* the district court stated:

> There is persuasive authority for the proposition that a governmental body has the same common law right as any other creditor "to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him." *United States v Munsey Trust Co,* 332 US 234, 239; 67 S Ct 1599; 91 L Ed 2022 (1947) (quoting *Gratiot v United States,* 40 US (15 Pet) 336, 370; 10 L Ed 759 (1841)). See also *Brown v Lobdell,* 36 Or App 397, 585 P2d 4, 7 (1978).

In response to this common-law argument, petitioner asserts that, even assuming a common-law right to setoff pursuant to *Wayne Co v State Treasurer,* 105 Mich App 249; 306 NW2d 468 (1981), *Secretary of State v Greco,* 85 Mich App 498; 271 NW2d 291 (1978), and *Castro v Goemaere,* 53 Mich App 78; 218 NW2d 395 (1974), because this case involved a disputed administrative finding rather than a judicial determination, the setoff

was not available. Petitioner's argument misconstrues the essence of the determination derived from the contractually determined dispute resolution process utilized in this case. The determination was liquidated and final, especially in light of the fact that, on appeal, the circuit court could not, as we have already discussed, review the merits. Therefore, the setoff was proper. *Smith v Curtiss*, 38 Mich 393 (1878).

Accordingly, pursuant to MCR 2.116(C)(8), this matter should have been dismissed for failure to state a claim upon which relief could be granted. As is apparent, there was no basis for mandamus because petitioner had no clear legal right to performance of the specific duty sought. *Keaton v Beverly Hills*, 202 Mich App 681, 684; 509 NW2d 544 (1993). The trial court's order is affirmed, the court having reached this conclusion albeit on another basis. *Williams v Lakeland Convalescent Center, Inc*, 4 Mich App 477, 483; 145 NW2d 272 (1966).

Affirmed.